UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF NEW YORK
_____

JOE DOE, a minor, by and through his
Guardians and Parents Jane Doe and
John Doe,

                            Plaintiff,

v.

BRITTONKILL CENT. SCH. DIST. BD.            1:18-CV-0142
OF EDUC.; BOCES; SUSAN DiDONATO;            (GTS/TWD)
MARY M. ROACH; ANGELINA MALONEY;
RICHARD POGUE; CHRISTOPHER
ROCKWELL; MARIA LEWIS; CHRISTINE
SHIELDS; AIMEE BISHOP; BRITTONKILL
CENT. SCH. DIST.; SCH. ATTORNEY;
SUPERINTENDENT; PRINCIPAL;
ASSISTANT PRINCIPAL; TITLE IX
COORDINATOR; UNION REPRESENTATIVE;
ERICK ROADCAP; CHRIS LUTGENS;
RYAN TURNBULL; KEVIN RETELL; MYLES
GOSS; MICHAEL FORTUN; JUDY WIEMAN;
and HELEN PARSONS,

                            Defendants.
_____

APPEARANCES:                                OF COUNSEL:

JOE DOE
   Plaintiff, *Pro Se*
C/O T.F.
25 Evergreen Road
Troy, New York 12180

JOHNSON & LAWS, LLC                         GREGG T. JOHNSON, ESQ.
   Counsel for Brittonkill Defendants       APRIL J. LAWS, ESQ.
648 Plank Road, Suite 204                   COREY A. RUGGIERO, ESQ.
Clifton Park, New York 12065                LORAINE CLARE JELINEK, ESQ.

WHITEMAN OSTERMAN & HANNA LLP          NORMA G. MEACHAM, ESQ.
  Counsel for BOCES Defendants          VITALIY VOLPOV, ESQ.
One Commerce Plaza, Suite 1900
Albany, New York 12260

RIVKIN RADLER LLP                      JAMES P. LAGIOS, ESQ.
  Counsel for Mary M. Roach            STANLEY J. TARTAGLIA, ESQ.
9 Thurlow Terrace
Albany, New York 12203

GLENN T. SUDDABY, Chief United States District Judge

## DECISION and ORDER

Currently before the Court, is a civil rights action filed by Joe Doe, a minor, by and through his guardians and parents Jane Doe and John Doe ("Plaintiff") against the following twenty-five entities and individuals ("Defendants"): Brittonkill Central School District Board of Education, Angelina Maloney, Richard Pogue, Christopher Rockwell, Maria Lewis, Christine Shields, Aimee Bishop, Brittonkill Central School District (the "District"), Erick Roadcap, Chris Lutgens, Ryan Turnbull, Kevin Retell, Myles Goss, Michael Fortun, Judy Wieman, and Helen Parsons (collectively "Brittonkill Defendants"); BOCES[1] and Susan DiDonato[2] (collectively "BOCES Defendants"); and Mary M. Roach, School Attorney, Superintendent, Principal,

---

[1]    The Amended Complaint changed the name of Defendant "Questar III (BOCE)S" to "BOCES." (Dkt. No. 34.) As a result, the Clerk of the Court is directed to correct the docket sheet accordingly.

[2]    In BOCES Defendants' motion to dismiss (Dkt. No. 44, Attach 1) counsel represented to the Court that the defendant referred to by Plaintiff as "Susan Didinato" is actually "Susan DiDonato." This representation is consistent with counsel's notice of appearance for this defendant. (Dkt. No. 12.) As a result, the Clerk of the Court is directed to amend the docket sheet accordingly. Any reference in the Amended Complaint (Dkt. No. 34) to "Susan Didinato" shall be deemed to refer to "Susan DiDonato."

Assistant Principal, Title IX Coordinator, and Union Representative.[3]  Pending in that action are

Brittonkill Defendants' motion to dismiss pursuant to Fed. R. Civ. P. 4(m) and 12(b)(6) (Dkt.

No. 39), Defendant Roach's motion to dismiss pursuant to Fed. R. Civ. P. 12(b)(6) (Dkt. No. 43),

and Defendant BOCES' motion to dismiss pursuant to Fed. R. Civ. P. 12(b)(6) (Dkt. No. 44).

For the reasons set forth below, Defendants' motions are granted.

## I.      RELEVANT BACKGROUND

### A.      Plaintiff's Claims

Generally, liberally construed, Plaintiff's Amended Complaint asserts claims arising from

a school district's Fall 2017 investigation of Plaintiff's charges of bullying, harassment and racial

discrimination at a high school that is "93% white" (specifically, occurring on a school bus and

school football team), causing him to quit the football team and request home tutoring.  (Dkt. No.

34.)  More specifically, Plaintiff asserts the following nine claims: (1) a claim of the denial of the

right to free speech under the First Amendment and 42 U.S.C. § 1983; (2) a claim of the denial of

the right to due process under the Fifth and/or Fourteenth Amendments and 42 U.S.C. § 1983;

(3) a claim of the right to equal protection of the laws under the Fourteenth Amendment and 42

U.S.C. § 1983; (4) a claim of the violation of Titles II, IV, VI, VII, and IX of the Civil Rights

Act; (5) a claim of the violation of the Americans with Disabilities Act ("ADA"); (6) a claim of

the violation of the Individuals with Disabilities Education Act ("IDEA"); (7) a claim of the

violation of Section 504 of the Rehabilitation Act; (8) a claim of the violation of 28 C.F.R. §

36.206; and (9) a claim of the violation of 18 U.S.C. §§ 241, 242 and 245.  (*Id.*)  As relief,

---

[3]      The Amended Complaint dropped "2 Teachers" as defendants in this action.
(Dkt. No. 34.)  As a result, the Clerk of the Court is directed to amend the docket sheet
accordingly.

Plaintiff seeks payment of private tutoring and payment of tuition at a local private school. (*Id.*)

Familiarity with the Amended Complaint is assumed in this Decision and Order, which is intended primarily for the review of the parties. (*Id.*)

**B.    Parties' Briefing on the Motions to Dismiss**

**1.    Brittonkill Defendants' Motion to Dismiss**

Generally, in support of their motion to dismiss, Brittonkill Defendants assert the following six arguments. (Dkt. No. 39, Attach. 4 [Brittonkill Defs.' Mem. of Law].)

First, Brittonkill Defendants argue that Plaintiff has failed to effectuate proper service on most Brittonkill Defendants pursuant to Fed. R. Civ. P. 4(m). (*Id.*) More specifically, Brittonkill Defendants argue that Plaintiff attempted to mass-serve all Brittonkill Defendants by serving Defendant Lewis with a box containing multiple copies of the summons and original Complaint. (*Id.*) Brittonkill Defendants concede that this service was sufficient on Defendants Lewis, the District, and Brittonkill Central School District Board of Education. (Dkt. No. 39, Attach. 4.) However, Brittonkill Defendants argue that this service was insufficient on Defendants Maloney, Pogue, Rockwell, Shields, Bishop, Roadcap, Lutgens, Turnbell, Retell, Goss, Fortun, Wieman, and Parsons. (*Id.*) Indeed, Brittonkill Defendants argue that on February 23, 2018, Brittonkill Defendants' counsel wrote a letter to Plaintiff identifying the deficiencies in Plaintiff's attempted service and that Plaintiff has not attempted to effectuate personal or sufficient service since then. (Dkt. No. 39, Attach. 2.)

Second, Brittonkill Defendants argue that the Amended Complaint is patently insufficient under Fed. R. Civ. P. 8 and is so unintelligible that it precludes a meaningful response by Brittonkill Defendants. (*Id.*) More specifically, Brittonkill Defendants argue that the Amended Complaint consists of a mixture of conclusory statements, legal declarations, and materials cut

and pasted from e-mails, websites, and unknown authorities, such that the Defendants and Court would have to make factual assumptions and construct legal claims before Defendants could meaningfully attempt to fashion a response. (*Id.*)

Third, Brittonkill Defendants argue that Plaintiff has failed to state any federal claim for relief against the individual Brittonkill Defendants (i.e., Angelina Maloney, Richard Pogue, Christopher Rockwell, Maria Lewis, Christine Shields, Aimee Bishop, Erick Roadcap, Chris Lutgens, Ryan Turnbull, Kevin Retell, Myles Goss, Michael Fortun, Judy Wieman, and Helen Parsons) because the Amended Complaint fails to assert any factual allegations plausibly suggesting that Plaintiff's constitutional rights were violated by state action that resulted in a cognizable injury pursuant to 42 U.S.C. § 1983. (*Id.*) More specifically, Brittonkill Defendants argue that the excerpts from alleged e-mail and correspondence that Plaintiff has cut and pasted into the Amended Complaint are not substitutes for factual allegations, and that the Amended Complaint offers no clarification or facts in support of any cognizable federal claim because it does not allege which actions of individual Brittonkill Defendants allegedly violated Plaintiff's rights. (*Id.*)

Fourth, Brittonkill Defendants argue that Plaintiff has failed to plead a *Monell* claim against the District because (a) the Amended Complaint fails to allege that Plaintiff's constitutional rights were violated, and (b) the Amended Complaint fails to allege that any such violation resulted from a custom or policy of the District. (*Id.*)

Fifth, in the alternative, Brittonkill Defendants argue that the individual Brittonkill Defendants are entitled to immunity as a matter of law because Plaintiff has not identified, and cannot identify, any case law that would have placed the individual Brittonkill Defendants on

notice that their alleged state actions, if any, were a violation of law or the rights that should have been afforded to Plaintiff. (*Id.*)

Sixth, and finally, Brittonkill Defendants argue that the Amended Complaint fails to state a claim against the individual Brittonkill Defendants because (a) it does not contain factual allegations plausibly suggesting that any of the individual Brittonkill Defendants was personally involved in violating Plaintiff's constitutional rights, and (b) the individual Brittonkill Defendants are not amendable to suit under some of the statutory bases that the Amended Complaint references, such as Title VII, Title VI, and Title IX. (*Id.*)

### 2. Defendant Roach's Motion to Dismiss

Generally, in support of her motion to dismiss, Defendant Roach asserts the following three arguments. (Dkt. No. 43, Attach. 6 [Def. Roach's Mem. of Law].)

First, Defendant Roach asserts that Plaintiff has failed to state a claim against her pursuant to 42 U.S.C. § 1983 because it does not allege (a) that she violated any specific constitutional rights, (b) that she was a state actor for purposes of § 1983 or that she was acting under color of law when she was acting as a private attorney for the Brittonkill Central School District, and (c) that she was personally involved in the alleged constitutional deprivations. (*Id.*)

Second, Defendant Roach argues that the Amended Complaint should be dismissed under the doctrine of collateral estoppel or the doctrine of *stare decisis* in order to avoid an inconsistent ruling. (*Id.*) More specifically, Defendant Roach argues that Plaintiff filed a similar pleading against, among others, the Troy Central School District, and that this Court already decided (in

that action) that the complaint was insufficient.  (*Id.*)[4]

Third, and finally, Defendant Roach argues that Plaintiff has failed to state a claim against Defendant Roach because the Amended Complaint does not contain any specific claim articulated against her (or any of the Defendants).  (*Id.*)  More specifically, Defendant Roach argues that the Amended Complaint was deficient because (a) it failed to identify any particular conduct of any particular Defendant that constituted an alleged violation of Plaintiff's rights, (b) with regard to Plaintiff's retaliation claim, it failed to articulate factual allegations relative to Defendant Roach or that Plaintiff sustained an injury caused by her, (c) with regard to Plaintiff's discrimination claim, it failed to articulate any conduct of Defendant Roach that constituted personal animus, discriminatory conduct, or which caused Plaintiff's injury, (d) with regard to Plaintiff's First Amendment claim, it failed to allege any conduct by Defendant Roach that restricted Plaintiff's freedom of speech or caused injury, (e) with regard to Plaintiff's due process claims pursuant to the Fifth and Fourteenth Amendments, the Fifth Amendment is inapplicable to this civil matter and it failed to allege any conduct by Defendant Roach that deprived Plaintiff of due process and equal protection or caused injury, (f) with regard to Plaintiff's Sixth Amendment claim, the Sixth Amendment is not applicable and leally untenable since it pertains to the rights of criminal defendants, (g) with regard to Plaintiff's denial of education and failure to follow Brittonkill Board of Education Policy claim, it failed to delineate any part of the policy

---

[4]       In that proceeding, the Court dismissed all of the plaintiff's claims with the exception of a First Amendment claim because it had been alleged that the plaintiff (the father of Joe Doe in this action) was barred from attending his daughter's basketball games by the Troy Central School District.  (*Id.*)  Defendant Roach argues that, because there is no similar allegation here, the sole basis for sustaining the First Amendment claim in the Troy action does not apply.  (*Id.*)

that was purportedly violated and failed to delineate any specific conduct by Defendant Roach

that caused an injury to Plaintiff, (h) with regard to Plaintiff's Title VI of the Civil Rights Act of

1964 claim, it failed to identify specific conduct on the part of Defendant Roach that was

discriminatory based upon race or color, or which caused any cognizable injury to Plaintiff, (i)

with regard to Plaintiff's Title VII of the Civil Rights Act of 1964 claim, it is not applicable and

legally untenable since it pertains to employment discrimination and there is no allegation that

Plaintiff is or was employed by any Defendant, and individuals are not subject to liability

pursuant to Title VII, (j) with regard to Plaintiff's Title IX education amendments, Defendant

Roach cannot be individually liable and it failed to delineate any specific conduct on the part of

Defendant Roach that was discriminatory based upon sex or that caused injury to Plaintiff, and

(k) with regard to Plaintiff's claims pursuant to the IDEA and the ADA, Plaintiff has failed to

exhaust the available administrative remedies and failed to articulate any specific conduct on the

part of Defendant Roach that gives rise to any injury (especially because she is a private attorney

with no substantive role in Plaintiff's education status, and Plaintiff has failed to allege that he

had a disability within the meaning of the statute).  (*Id.*)

### 3. BOCES Defendants' Motion to Dismiss

Generally, in support of their motion to dismiss, BOCES Defendants assert the following

two arguments.  (Dkt. No. 44, Attach. 1 [BOCES Defs.' Mem. of Law].)

First, BOCES Defendants argue that Plaintiff has failed to state a claim against BOCES

Defendants.  (*Id.*)  More specifically, BOCES Defendants argue that the Amended Complaint is

deficient for the following reasons: (a) it does not allege that BOCES Defendants failed to afford

Plaintiff the constitutional due process to which he was entitled; (b) with regard to Plaintiff's

conspiracy claims, it lacks any factual basis, its allegations are conclusory, and it does not allege any act on the part of Defendant DiDonato in furtherance of the goal of depriving Plaintiff of his constitutional rights; (c) with regard to Plaintiff's state law claims, it does not allege that he filed a notice of claim as required by N.Y. Educ. Law § 3813(1); (d) with regard to Plaintiff's aiding-and-abetting claim, it fails to allege facts supporting such a claim against BOCES Defendants pursuant to N.Y. Exec. Law § 296(6); (e) with regard to Plaintiff's race and gender discrimination claims, it fails to provide any basis for imputing liability for BOCES Defendants and it contains no allegations that BOCES Defendants acted in a discriminatory fashion; (f) Plaintiff's remaining claims are either directed at Brittonkill Defendants or are not cognizable because BOCES Defendants do not provide any educational services to Plaintiff and thus do not owe him any duty of care; (g) the Amended Complaint does not allege an employment relationship, thus it cannot assert ADA or Title VII claims; (h) the Sixth Amendment is inapplicable in a civil context; (i) the Amended Complaint does not assert a First Amendment claim against BOCES Defendants because its factual allegations make clear that Defendant DiDonato gave Plaintiff and his representatives every opportunity to speak, provide evidence, and participate in the informal hearing; and (j) with regard to Plaintiff's Title VI and Title IX claims, it asserts only "legal conclusions" (which are insufficient to state a claim), it does not assert any allegations of sex-based discrimination or retaliation, and it fails to identify any discriminatory act by Defendant DiDonato in her role as impartial hearing officer. (*Id.*)

Second, BOCES Defendants argue that no individual liability may extend to Defendant Didonato as a matter of law, because Defendant DiDonato's actions are protected by the doctrine of qualified immunity. (*Id.*) Further, BOCES Defendants argue that Plaintiff fails to state a Title

VI or a Title IX claim against Defendant DiDonato in her individual capacity because she is not a recipient of federal funding. (*Id.*)

### 4. Plaintiff's Combined Response to Defendants' Motions

#### a. Plaintiff's Memorandum of Law in Support of His "Motion to Dismiss Defendant's Motion to Dismiss"[5]

Generally, in his "motion to dismiss," Plaintiff attempts to set forth three causes of action, which he refers to as "counts," and argues that he has alleged facts plausibly suggesting each claim. (Dkt. No. 63, Attach. 1 [Pl.'s "Mot. to Dismiss"].) In addition, Plaintiff sets forth several more factual allegations in support of the claims asserted in the Amended Complaint. (*Id.*)

Liberally construed, Plaintiff's "motion to dismiss" asserts the following three claims: (1) a claim for intentional discrimination pursuant to Title VI of the Civil Rights Act of 1964, 42 U.S.C. § 2000d *et seq.*, and violation of Plaintiff's right to a fair and appropriate public education ("FAPE") on account of his race; (2) a claim of conspiracy to deprive Plaintiff of his civil rights pursuant to 42 U.S.C. § 1985 and neglect to prevent violations of his civil rights pursuant to 42 U.S.C. § 1986; and (3) a claim of deliberate indifference to discrimination against Plaintiff by

---

[5]      The denial of an opponent's motion is not an appropriate request for relief in a motion under Fed. R. Civ. P. 7(b) because such a denial may be obtained through merely successfully resisting the opponent's motion. *See C.H.R.I.S.T., Inc. v. Meyers*, 00-CV-50402, 2002 WL 257814, at *1 (N.D. Ill. Feb. 20, 2002) ("[A] separate motion to deny an opposing party's motion for summary judgment is obviously unnecessary."); *Kan.-Neb. Natural Gas Co. v. City of St. Edward, Neb.*, 135 F. Supp. 629, 633 (D. Neb. 1955) ("A motion to deny an antecedent motion already set for hearing accomplishes nothing that could not be done by a simple appearance in resistance to the earlier motion."); *Fox v. Am. Airlines, Inc.*, 00-CV-0368, 2001 WL 1597851, at *1 (N.D. Tex. Dec. 12, 2001) ("[A] separate motion to deny summary judgment is unnecessary, and accordingly Plaintiff's Motion to Deny [Defendant's Motion for] Summary Judgment is denied as moot."); *Jones v. Milwaukee Cnty.*, 74-C-0374,1979 WL 2035, at *5 (E.D. Wis. May 1, 1979) ("To oppose a motion, it is only necessary to file a brief or affidavits in opposition. A motion to deny the motion opposed is unnecessary. The defendants' motion is superfluous and will therefore be dismissed.").

other persons whom the District exercised substantial control over pursuant to Title VI of the Civil Rights Act. (*Id.*)

In addition, Plaintiff's opposition papers include a signed but unsworn "affidavit" and attachments from John Doe that present several details about the allegations underlying Plaintiff's causes of actions that were lacking from Plaintiff's Amended Complaint. (*See generally* Dkt. No. 63.) More specifically, Plaintiff's opposing papers assert the following factual allegations in support of Plaintiff's claims (including his three new claims). (*Id.*)

On March 23, 2017, Plaintiff had a verbal conflict with a female student on the bus. (*Id.*) The female student's parent chased the bus then boarded the bus and used racial slurs directed at Plaintiff with the intention of attacking Plaintiff. (*Id.*) This incident was known by Defendant Pogue (Brittonkill school principal), Defendant Rockwell (Brittonkill school assistant principal and Dignity for All Students Act coordinator), and Defendant Shields (Title IX coordinator). (*Id*.) In addition, the New York State Police were summoned to intervene and remove the parent from the bus. (*Id.*) The District attempted to press charges against the parent but the charges were not pursued by law enforcement. (*Id.*) The parent was banned from District property. (*Id.*)

On October 3, 2017, Defendant Roadcap (Plaintiff's football coach) made Plaintiff run hills for being late to practice. (*Id.*) When Plaintiff asked Defendant Roadcap for Defendant Lutgen's (the football offensive coordinator) phone number, Defendant Roadcap sent Plaintiff the wrong phone number. (*Id.*) Plaintiff claims these discriminatory actions were motivated by race. (*Id.*)

On October 4, 2017, during a meeting Defendant Progue gritted his teeth and leaned into Plaintiff's face to admonish him for the way he was speaking to Defendant Roadcap. (*Id.*)

Defendant Progue's actions ended the meeting. (*Id.*) John and/or Jane Doe then requested a second meeting to take place later that day, with the Title IX coordinator present to protect Plaintiff and to open a Title IX investigation. (*Id.*)[6] At the second meeting on October 4, 2017, Defendant Bishop was present as a union representative on behalf of and at the request of Defendant Roadcap, but she did not identify herself or why she was present. (*Id.*) The Title IX coordinator was not present. (*Id.*)

At a meeting on October 5, 2017, Defendant Bishop was again present to represent Defendant Roadcap and Defendant Pogue. (*Id.*) However, despite the request by John and/or Jane Doe, the Title IX coordinator was still not present to represent Plaintiff. (*Id.*) As a result, Plaintiff claims that he was denied representation and that his First Amendment, due process, and equal protection rights were all violated. (*Id.*)

On October 6, 2017, John and/or Jane Doe called Defendant Maloney (District Superintendent) and left a message regarding their requests for a Title IX investigation and representation at the prior meetings. (*Id.*) Defendant Maloney never returned this phone call. (*Id.*)

On or about October 10, 2017, Defendant Shields (the Title IX coordinator) contacted Plaintiff to conduct an interview. (*Id.*)[7] Plaintiff requested that John Doe be present for the

_____

[6]     Plaintiff alleges that, within four days of a student filing a complaint pursuant to Title IX, Section 504 of the Rehabilitation Act, or the Americans with Disabilities Act, the student shall be provided with information regarding the resolution of the complaint. (*Id.*) Moreover, Plaintiff alleges that the student shall be and provided the opportunity to present grievances in accordance with the procedure free from coercion, interference, restraint, discrimination, or reprisal. (*Id.*)

[7]     Plaintiff alleges that the policy discussed above in note 6 of this Decision and Order was violated because six days elapsed between his request for a Title IX investigation on

interview.  (*Id.*)  Defendant Shields e-mailed John Doe with a sense of urgency to begin the investigation before John Doe would be available on October 11, 2017.  (*Id.*)  John Doe then provided Defendant Shields with a Title IX submission for discussion and review.  (*Id.*)  However, when Plaintiff and John Doe met with Defendant Shields, Sheilds did not address the Title IX submission and instead asked them about events that did not occur.  (*Id.*)  During this meeting, Defendant Shields did not allow John Doe or Plaintiff to discuss their concerns and denied their request for any additional meeting.  (*Id.*)

During this time period, Plaintiff called John and/or Jane Doe daily requesting that they pick him up from school.  (*Id.*)  Every day at school Plaintiff was tormented and ostracized, which he describes as "hellatious [sic]."  (*Id.*)  When meetings were held, people would act strange, not speak, and make social media attacks on him.  (*Id.*).

In a meeting on October 18, 2017, Defendant Maloney verbally attacked Plaintiff.  (*Id.*)  Also on or about October 18, 2017, Plaintiff quit the football team to denounce the false assertion that his dispute related to playing time as opposed to discrimination and retaliation.  (*Id.*) Plaintiff no longer wanted to attend school because he did not feel safe.  (*Id.*)

 Also on October 18, 2017, Defendant Shields issued a report that acknowledged Plaintiff's grievances and determined that Brittonkill Defendants had created a racially hostile environment, discriminated against Plaintiff, retaliated against Plaintiff, and violated Plaintiff's civil rights and equal protection of the law.  (*Id.*)  In addition, Defendant Shields' report determined that Plaintiff was denied representation, due process, and equal treatment.  (*Id.*)

---

October 4, 2017, and October 10, 2017, when he was contacted by Defendant Shields for an interview.  (*Id.*)

Moreover, Defendant Shields' report determined that Defendant Pogue admitted to acting in a threatening manner towards Plaintiff on October 4, 2017. (*Id.*) Defendant Shields' report identified that Defendant Maloney did not respond to a phone call made on October 6, 2017, and Defendant Pogue did not respond to an e-mail sent on October 6, 2017. (*Id.*) Thus, Plaintiff claims that Defendants have identified and admitted civil rights violations and a racially hostile environment. (*Id.*)

At some time Plaintiff or his parents John and/or Jane Doe requested an appeal from Defendant Shields' report. (*Id.*) The request for an appeal hearing (Stage II) was granted and Defendant DiDonato, an attorney for Defendant BOCES, was selected by Brittonkill Defendants to act as impartial hearing officer pursuant to a resource sharing agreement between the District and BOCES. (*Id.*)

On or about November 6, 2017, Defendant Roach and Defendant DiDonato had a conversation during which they discussed sharing services and covering up the racially hostile environment. (*Id.*) Defendant Roach and Defendant DiDonato manufactured a story for Defendant Maloney to tell at the appeal hearing, in attempt to hide the admitted violations, which ultimately led to Plaintiff's attack on January 23, 2018. (*Id.*)

On November 20, 2017, the Stage II appeal hearing was held. (*Id.*) At this appeal hearing, Defendant DiDonato acted on behalf of superintendent Defendant Maloney. (*Id.*) The March 23, 2017, incident was brought up during the appeal hearing, and Jane and John Doe were denied the opportunity to be heard. (*Id.*) John and Jane Doe expressed their frustration with not being familiar with the process and feeling that their complaints had been ignored. (*Id.*) During the Stage II hearing, Defendant DiDonato failed to comply with the law and ignored the admitted

civil rights and policy violations identified by Defendant Shields. (*Id.*)

On December 5, 2017, Defendant DiDonato, acting as superintendent, issued a report and findings that ignored the laws and violated the school policies. (*Id.*) In her report, Defendant DiDonato found that after the request for a Title IX investigation, Brittonkill Defendants should have immediately referred the matter to Defendant Shields and rescheduled the October 4, 2017, meeting so that she could attend. (*Id.*) In addition, Defendant DiDonato's report suggested utilizing sign-in sheets at meetings so that individuals would know who else was present at the meeting. (*Id.*) Thus, Defendant DiDonato's report supports Defendant Shields' report of October 18, 2017. (*Id.*) Plaintiff claims that Defendant DiDonato's report further establishes that Plaintiff's civil rights were violated such that Plaintiff was denied representation and equal protection of the law. (*Id.*) Moreover, Plaintiff claims that Defendant DiDonato's report established that Title IX was violated and acknowledged that Defendant Shields' report did not address Plaintiff's allegation that Defendant Roadcap had acted in a threatening manner towards Plaintiff, but that DiDonato's report found no evidence to suggest that the penalty of requiring Plaintiff to run hills was discriminatory. (*Id.*) Plaintiff claims that Defendant Roadcap's actions requiring Plaintiff to run hills was retaliatory. (*Id.*)

On December 20, 2017, Plaintiff appealed Defendant DiDinato's report and requested a hearing in front of the Board of Education because the report included a lie, was based on discrimination, and did not include a determination whether there had been a violation of the Civil Rights Act, Section 504 of the Rehabilitation Act, or the ADA, and if applicable, a proposal for equitably resolving the complaint. (*Id.*) However, Plaintiff does not identify the lie or any basis for the allegation that the report was based on discrimination. (*Id.*) In addition, Defendant

DiDonato's ruling created a dangerous environment that led to Plaintiff being attacked as a result of the manufactured story by Defendant Roach and Defendant DiDonato and stated on the record by Defendant Maloney, though Plaintiff fails to identify what this manufactured story was. (*Id.*) Defendant DiDinato's report also identified that, during the meeting held on October 4, 2017, John Doe told Defendant Pogue to shut up, but the report failed to mention that John Doe asked Defendant Pogue to get him the Title IX coordinator. (*Id.*) In addition, Defendant Pogue admitted to getting out of his seat, gritting his teeth, and admonishing Plaintiff for the way he was speaking to Defendant Roadcap. (*Id.*) Plaintiff claims that Defendant Pogue's behavior during the meeting of October 4, 2017, violated the Board of Education policy, the governing law, his civil rights protections, and the Student Bill of Rights for Brittonkill High School students. (*Id.*) Moreover, Plaintiff claims that Defendant DiDontao's report ignored admitted civil rights violations. (*Id.*)

On or about December 26, 2017, a Stage III hearing was held by the Board of Education. (*Id.*) At the Stage III hearing, Plaintiff or his representatives were denied the right to be heard and present evidence. (*Id.*) In addition, the recording from the appeal hearing was never provided to the Board of Education for Stage III of the administrative process. (*Id.*)

On January 23, 2018, Plaintiff was attacked by the same female student he had a verbal conflict with on the school bus on March 23, 2017. (*Id.*) The incident of January 23, 2018, was directly related to the incident of March 23, 2017. (*Id.*)

On January 24, 2018, Plaintiff became sick on the morning bus ride to school. (*Id.*) Plaintiff has not attended school since he was sent home by the nurse at 7:41 a.m. on January 24, 2018, and marked absent for the day. (*Id.*)

There have been several exchanges between Plaintiff's parents and Brittonkill Defendants regarding Plaintiff's school work and education arrangements. (*Id.*)

On February 22, 2018, Defendant Pogue offered tutoring for Plaintiff. (*Id.*) Plaintiff claims that the tutoring should have been offered by Defendant Pogue on October 18, 2017, which would have ended this matter. (*Id.*)

Plaintiff claims that all of these events culminated in an angry, racially hostile environment wherein Defendants admitted to denying his civil rights protections, and which allowed Defendant Roadcap and Defendant Pogue to act in a threatening manner towards Plaintiff. (*Id.*) In addition, Plaintiff claims that Defendants have a custom, policy, or practice of retaliating against individuals who complain of discrimination. (*Id.*) Finally, Plaintiff claims that Defendant DiDonato was hired by Brittonkill Defendants to cover this all up. (*Id.*)

> **b.** **Plaintiff's Memorandum of Law in Opposition to Defendants' Motion to Dismiss**

Liberally construed, Plaintiff's opposition memorandum of law asserts the following three arguments. (Dkt. No. 63, Attach. 1.)

First, Plaintiff argues that, when his new factual assertions are considered, he has alleged facts plausibly suggesting his Title VI discrimination claim because Defendant Shields, acting as Title IX coordinator, admitted in her report of October 18, 2017, that the school failed to provide Plaintiff and his parents with adequate protections on October 4, 2017, when John Doe requested the name of the Title IX coordinator and for reasons unknown, the name was not given to him. (*Id.*) In addition, Plaintiff argues, the fourth time John or Jane Doe requested home tutoring for the safety of Plaintiff, they were immediately denied such tutoring by Defendant Pogue because

the District was not aware of any known disability. (*Id.*) However, Plaintiff argues, the law requires that even if an individual education plan is not written for a child, the child is still entitled to a FAPE and the District's failure to take into consideration Plaintiff's safety concerns violated the IDEA. (*Id.*) Moreover, Plaintiff argues that the Board of Education's refusal to allow Plaintiff or his representatives to be heard at the Stage II proceeding was a violation of his First Amendment right and such violation was due to discrimination on the basis of his race. (*Id.*)

Second, Plaintiff argues that he has alleged facts plausibly suggesting a claim for conspiracy to deprive him of his civil rights pursuant to 42 U.S.C. § 1985 because he alleged that the District conspired to violate Plaintiff's civil rights. For example, Plaintiff argues that the Amended Complaint and opposition papers allege that Defendants hired Defendant DiDinato to act as an impartial hearing officer for the Stage II appeal hearing but that Defendant DiDinato was aligned with Brittonkill Defendants; Defendants conspired to withhold the name of the Title IX coordinator when John Doe requested it on October 4, 2017; Defendants treated Plaintiff differently from Defendant Roadcap, who was represented by Defendant Bishop, despite Plaintiff's request for representation by the Title IX coordinator; and Defendants conspired together to hide evidence of discrimination from the Board of Education prior to the Stage III proceeding. (*Id.*) Moreover, Plaintiff argues that Defendants conspired to harass him on the basis of his race such that he did not feel safe in school and Defendants denied him of his right to FAPE in violation of IDEA. (*Id.*) In addition, Plaintiff argues that Defendants conspired to deny him his First Amendment right of free speech because Defendant DiDonato would not permit Plaintiff and/or his representatives to ask the superintendent a question outside of the specified

process during the Stage II hearing. (*Id.*) Plaintiff argues that he sufficiently alleged that

Defendants neglected to prevent violations of his civil rights pursuant to 42 U.S.C. § 1986,

because the Amended Complaint and opposition papers allege that they neglected to intervene

when Plaintiff was harassed on the basis of his race by other students and third parties and

refused to take the bullying into consideration when considering his requests for tutoring, which

violated his right to a FAPE. (*Id.*)

Third, and finally, Plaintiff argues that he has alleged facts plausibly suggesting a claim

that Defendants were deliberately indifferent to known discriminatory harassment of Plaintiff by

other students such that he was denied the benefits of the educational system, in violation of Title

VI. (*Id.*) However, Plaintiff does not identify any alleged facts in this portion of his

memorandum of law. (*Id.*)

### 5. Defendant Roach's Reply Declaration[8]

Generally, in her reply, Defendant Roach submits an attorney declaration that asserts two

arguments: (1) Plaintiff has failed to state a claim or cause of action against Defendant Roach

because (a) her only role was that of a private attorney retained by the Board of Education and

she simply arranged for the Stage II hearing requested by Plaintiff, and (b) she was not

substantively involved in the decision-making process nor did she take any of the actions

mentioned in the Amended Complaint; and (2) in his opposition memorandum of law, Plaintiff

does not specifically address any of the arguments asserted by Defendant Roach and instead

---

[8] In the future, counsel is cautioned to comply with Local Rule 7.1(a)(2), which provides "[a]n affidavit must not contain legal arguments but must contain factual and procedural background that is relevant to the motion the affidavit supports." In addition, counsel is cautioned to comply with Local Rule 7.1(a)(1)'s requirement that "[a]ll memoranda of law shall contain a table of contents."

Plaintiff rehashes the fact that he is dissatisfied with the results of the Stage II hearing, with which Defendant Roach had no role. (*See generally* Dkt. No. 64 [Def. Roach's Reply].)

### 6. Brittonkill Defendants' Reply Memorandum of Law

Generally, in their reply memorandum of law, Brittonkill Defendants assert the following four arguments. (*See generally* Dkt. No. 65 [Brittonkill Defs.' Reply Mem. of Law].)

First, Brittonkill Defendants argue that, because Plaintiff has disregarded the most basic Fed. R. Civ P. 8(a) pleading requirements, his Amended Complaint should be dismissed. (*Id.*) Brittonkill Defendants argue that, even a *pro se* plaintiff must present factual allegations and a short, plain statement of his claim sufficient to put each defendant on notice of the claim they are obliged to defend, and that neither Plaintiff's Amended Complaint nor Plaintiff's opposition papers satisfy this basic pleading standard. (*Id.*)

Second, Brittonkill Defendants argue that the Amended Complaint should be dismissed pursuant to Fed. R. Civ. P. 12(c) because the Amended Complaint must contain more than bald assertions and conclusions of law to state a claim. (*Id.*) Brittonkill Defendants argue that Plaintiff has not presented any factual allegations demonstrating that his constitutional rights were violated by a state action taken by any Defendant resulting in an injury pursuant to 42 U.S.C. § 1983. (*Id.*)

Third, Brittonkill Defendants argue that Plaintiff's failure to respond to Point I (failure to effectuate service on most Brittonkill Defendants), Point II (insufficiency of the Amended Complaint pursuant to Fed. R. Civ. P. 8), Point IV (failure to plead a *Monell* claim against the District), and Point V (the individual Defendants' entitlement to qualified immunity as a matter of law) of Brittonkill Defendants' memorandum of law should be deemed an admission, and the

Amended Complaint should be dismissed.  (*Id.*)

Fourth, and finally, Brittonkill Defendants argue that the Amended Complaint fails to state a federal claim against District Defendants or the individual Defendants.  (*Id.*)  Brittonkill Defendants argue that the law cited by Plaintiff to support his argument that the Amended Complaint is sufficient is misplaced and erroneous because it relates to claims of employment discrimination and sex discrimination, neither of which are claims made by Plaintiff.  (*Id.*)  Brittonkill Defendants argue that, in addition, Plaintiff attempts to plead additional causes of action in his opposition papers (namely, conspiracy to deprive civil rights pursuant to 42 U.S.C. § 1985 and neglect to prevent pursuant to 42 U.S.C. § 1986), which is improper without leave of Court.  (*Id.*)  Brittonkill Defendants argue that, moreover, Plaintiff is unable to state a claim against the individual Defendants because his Amended Complaint and opposition papers fail to allege how Defendants were personally involved in violation of his constitutional rights.  (*Id.*)

### 7.    BOCES Defendants' Reply Memorandum of Law

Generally, in their reply memorandum of law, BOCES Defendants assert the following two arguments.  (*See generally* Dkt. No. 66 [BOCES Defs.' Reply Mem. of Law].)

First, BOCES Defendants argue that the Court should disregard Plaintiff's unsworn affidavit of John Doe because (a) it includes several new factual allegations and documents that are not integral to the Amended Complaint, (b) Plaintiff cannot shore up a deficient pleading through extrinsic documents in opposition to a motion to dismiss, and (c) it does not contain a statement pursuant to 28 U.S.C. § 1746, attesting to the truth and accuracy of the affidavit.  (*Id.*)

Second, BOCES Defendants argue that, in the alternative, should the Court consider John Doe's affidavit as a second attempt to amend the Complaint, the Court should find that Plaintiff

has failed to sufficiently allege any claims against BOCES Defendants. (*Id.*) BOCES Defendants argue that such a second Amended Complaint is deficient for the following reasons: (a) any due process claim is refuted by the documentary evidence and Plaintiff's own allegations regarding the process that was provided; (b) the Brittonkill Superintendent, not Defendant DiDonato, made the final determination at Stage II of the administrative process; (c) the allegation that Defendant DiDonato's report does not mention civil rights, and is therefore a violation of due process, is without merit because Defendant DiDonato's report clearly addresses Plaintiff's concerns regarding discrimination; (d) Plaintiff's conspiracy claim lacks a factual basis because one could not reasonably infer a conspiracy from the e-mail exchange between Defendant Roach and Defendant DiDonato, which Plaintiff uses to support his conspiracy claim; (e) Plaintiff's First Amendment claim similarly lacks a factual basis because the conversation between John Doe and Defendant DiDonato cited by Plaintiff in support of his First Amendment claim makes clear that Defendant DiDonato informed Plaintiff and his parents that they must follow the proper procedure and take turns with the District presenting evidence, which they did; (f) Plaintiff's remaining claims are either directed at Brittonkill Defendants or fail as a matter of law; (g) to the extent Plaintiff alleges claims pursuant to the ADA, Section 504 of the Rehabilitation Act of 1973, or IDEA, those claims fail as a matter of law because Plaintiff does not allege he suffered from any disability; (h) Plaintiff's claims alleging various negligent and intentional torts fail as a matter of law because Plaintiff failed to allege any facts plausibly suggesting that BOCES Defendants owed him a duty of care; and (i) Plaintiff has not sufficiently alleged a Title VI claim against BOCES Defendants because Plaintiff failed to identify any discriminatory act on the part of Defendant DiDonato in exercising her role as an impartial

hearing officer. (*Id.*) BOCES Defendants argue that any remaining claims should be dismissed as abandoned because Plaintiff failed to oppose dismissal in response to BOCES Defendants' principal brief. (*Id.*)

## II. LEGAL STANDARD GOVERNING A MOTION TO DISMISS FOR FAILURE TO STATE A CLAIM

"A motion to dismiss on the basis that an action is barred by the statute of limitations is analyzed under Federal Rule of Civil Procedure 12(b)(6), not 12(b)(1)." *Garner v. DII Indus., LLC*, 08-CV-6191, 2010 WL 456801, at *1 (W.D.N.Y. Feb. 4, 2010) (citing *Ghartey v. St John's Queens Hosp.*, 869 F.2d 160, 162 [2d Cir. 1989]).

It has long been understood that a dismissal for failure to state a claim upon which relief can be granted, pursuant to Fed. R. Civ. P. 12(b)(6), can be based on one or both of two grounds: (1) a challenge to the "sufficiency of the pleading" under Fed. R. Civ. P. 8(a)(2); or (2) a challenge to the legal cognizability of the claim. *Jackson v. Onondaga Cnty.*, 549 F. Supp. 2d 204, 211, nn.15-16 (N.D.N.Y. 2008) (McAvoy, J., adopting Report-Recommendation on *de novo* review).

Because such dismissals are often based on the first ground, a few words regarding that ground are appropriate. Rule 8(a)(2) of the Federal Rules of Civil Procedure requires that a pleading contain "a *short and plain* statement of the claim *showing* that the pleader is entitled to relief." Fed. R. Civ. P. 8(a)(2) [emphasis added]. In the Court's view, this tension between permitting a "short and plain statement" and requiring that the statement "show[]" an entitlement to relief is often at the heart of misunderstandings that occur regarding the pleading standard established by Fed. R. Civ. P. 8(a)(2).

On the one hand, the Supreme Court has long characterized the "short and plain" pleading standard under Fed. R. Civ. P. 8(a)(2) as "simplified" and "liberal." *Jackson*, 549 F. Supp. 2d at 212, n.20 (citing Supreme Court case). On the other hand, the Supreme Court has held that, by requiring the above-described "showing," the pleading standard under Fed. R. Civ. P. 8(a)(2) requires that the pleading contain a statement that "give[s] the defendant *fair notice* of what the plaintiff's claim is and the grounds upon which it rests." *Jackson*, 549 F. Supp. 2d at 212, n.17 (citing Supreme Court cases) (emphasis added).[9]

The Supreme Court has explained that such *fair notice* has the important purpose of "enabl[ing] the adverse party to answer and prepare for trial" and "facilitat[ing] a proper decision on the merits" by the court. *Jackson*, 549 F. Supp. 2d at 212, n.18 (citing Supreme Court cases); *Rusyniak v. Gensini,* 629 F. Supp. 2d 203, 213 & n.32 (N.D.N.Y. 2009) (Suddaby, J.) (citing Second Circuit cases). For this reason, as one commentator has correctly observed, the "liberal" notice pleading standard "has its limits." 2 *Moore's Federal Practice* § 12.34[1][b] at 12-61 (3d ed. 2003). For example, numerous Supreme Court and Second Circuit decisions exist holding that a pleading has failed to meet the "liberal" notice pleading standard. *Rusyniak,* 629 F. Supp. 2d at 213, n.22 (citing Supreme Court and Second Circuit cases); *see also Ashcroft v. Iqbal*, 129 S. Ct. 1937, 1949-52 (2009).

Most notably, in *Bell Atlantic Corp. v. Twombly*, the Supreme Court reversed an appellate decision holding that a complaint had stated an actionable antitrust claim under 15 U.S.C. § 1.

---

[9]    *Accord, Flores v. Graphtex*, 189 F.R.D. 54, 54 (N.D.N.Y. 1999) (Munson, J.); *Hudson v. Artuz*, 95-CV-4768, 1998 WL 832708, at *1 (S.D.N.Y. Nov. 30, 1998); *Powell v. Marine Midland Bank*, 162 F.R.D. 15, 16 (N.D.N.Y.1995) (McAvoy, C.J.).

*Bell Atlantic Corp. v. Twombly*, 127 S. Ct. 1955 (2007).  In doing so, the Court "retire[d]" the

famous statement by the Court in *Conley v. Gibson*, 355 U.S. 41, 45-46 (1957), that "a complaint

should not be dismissed for failure to state a claim unless it appears beyond doubt that the

plaintiff can prove no set of facts in support of his claim which would entitle him to relief."

*Twombly*, 127 S. Ct. at 1968-69.  Rather than turn on the *conceivability* of an actionable claim,

the Court clarified, the "fair notice" standard turns on the *plausibility* of an actionable claim.  *Id.*

at 1965-74.  The Court explained that, while this does not mean that a pleading need "set out in

detail the facts upon which [the claim is based]," it does mean that the pleading must contain at

least "some factual allegation[s]."  *Id.* at 1965.  More specifically, the "[f]actual allegations must

be enough to raise a right to relief above the speculative level [to a plausible level]," assuming

(of course) that all the allegations in the complaint are true.  *Id.*

As for the nature of what is "plausible," the Supreme Court explained that "[a] claim has

facial plausibility when the plaintiff pleads factual content that allows the court to draw the

reasonable inference that the defendant is liable for the misconduct alleged."  *Ashcroft v. Iqbal*,

129 S. Ct. 1937, 1949 (2009).  "[D]etermining whether a complaint states a plausible claim for

relief . . . [is] a context-specific task that requires the reviewing court to draw on its judicial

experience and common sense. . . .  [W]here the well-pleaded facts do not permit the court to

infer more than the mere possibility of misconduct, the complaint has alleged–but it has not

show[n]–that the pleader is entitled to relief."  *Iqbal*, 129 S. Ct. at 1950 [internal quotation marks

and citations omitted].  However, while the plausibility standard "asks for more than a sheer

possibility that a defendant has acted unlawfully," *id.*, it "does not impose a probability

requirement."  *Twombly*, 550 U.S. at 556.

Because of this requirement of factual allegations plausibly suggesting an entitlement to relief, "the tenet that a court must accept as true all of the allegations contained in the complaint is inapplicable to legal conclusions. Threadbare recitals of the elements of a cause of action, supported by merely conclusory statements, do not suffice." *Iqbal*, 129 S. Ct. at 1949. Similarly, a pleading that only "tenders naked assertions devoid of further factual enhancement" will not suffice. *Iqbal*, 129 S. Ct. at 1949 (internal citations and alterations omitted). Rule 8 "demands more than an unadorned, the-defendant-unlawfully-harmed-me accusation." *Id.* (citations omitted).

However, complaints by *pro se* parties are accorded more deference than those filed by attorneys. *See Erickson v. Pardus*, 551 U.S. 89, 127 (2007). As such, *Twombly* and *Iqbal* notwithstanding, this Court must continue to "construe [a complaint] broadly, and interpret [it] to raise the strongest arguments that [it] suggests." *Weixel v. Bd. of Educ.*, 287 F.3d 139, 146 (2d Cir. 2002).

Finally, a few words are appropriate regarding what documents are considered when a dismissal for failure to state a claim is contemplated. Generally, when contemplating a dismissal pursuant to Fed. R. Civ. P. 12(b)(6) or Fed. R. Civ. P. 12(c), the following matters outside the four corners of the complaint may be considered without triggering the standard governing a motion for summary judgment: (1) documents attached as an exhibit to the complaint or answer, (2) documents incorporated by reference in the complaint (and provided by the parties), (3) documents that, although not incorporated by reference, are "integral" to the complaint, or (4)

any matter of which the court can take judicial notice for the factual background of the case.[10]

## III.    ANALYSIS

### A.    Whether Defendants' Motions to Dismiss for Failure to State a Claim Should Be Granted

After carefully considering the matter, the Court grants Defendants' motions to dismiss

for failure to state a claim for the reasons stated in their memoranda of law.  (Dkt. No. 39,

Attach. 4 [Brittonkill Defs.' Mem. of Law]; Dkt. No. 43, Attach. 6 [Def. Roach's Mem. of Law];

Dkt. No. 44, Attach. 1 [BOCES Defs.' Mem of Law]; Dkt. No. 64 [Def. Roach's Reply Att'y

---

[10]    *See* Fed. R. Civ. P. 10(c) ("A copy of any written instrument which is an exhibit to a pleading is a part thereof for all purposes."); *L-7 Designs, Inc. v. Old Navy, LLC*, No. 10-573, 2011 WL 2135734, at *1 (2d Cir. June 1, 2011) (explaining that conversion from a motion to dismiss for failure to state a claim to a motion for summary judgment is not necessary under Fed. R. Civ. P. 12[d] if the "matters outside the pleadings" in consist of [1] documents attached to the complaint or answer, [2] documents incorporated by reference in the complaint (and provided by the parties), [3] documents that, although not incorporated by reference, are "integral" to the complaint, or [4] any matter of which the court can take judicial notice for the factual background of the case); *DiFolco v. MSNBC Cable L.L.C.*, 622 F.3d 104, 111 (2d Cir. 2010) (explaining that a district court considering a dismissal pursuant to Fed. R. Civ. 12(b)(6) "may consider the facts alleged in the complaint, documents attached to the complaint as exhibits, and documents incorporated by reference in the complaint. . . .  Where a document is not incorporated by reference, the court may nevlerss consider it where the complaint relies heavily upon its terms and effect, thereby rendering the document 'integral' to the complaint. . . . However, even if a document is 'integral' to the complaint, it must be clear on the record that no dispute exists regarding the authenticity or accuracy of the document.  It must also be clear that there exist no material disputed issues of fact regarding the relevance of the document.") [internal quotation marks and citations omitted]; *Chambers v. Time Warner, Inc.*, 282 F.3d 147, 152 (2d Cir. 2009) ("The complaint is deemed to include any written instrument attached to it as an exhibit or any statements or documents incorporated in it by reference.") (internal quotation marks and citations omitted); *Int'l Audiotext Network, Inc. v. Am. Tel. & Tel. Co.*, 62 F.3d 69, 72 (2d Cir.1995) (per curiam) ("[W]hen a plaintiff chooses not to attach to the complaint or incorporate by reference a [document] upon which it solely relies and which is integral to the complaint," the court may nevertheless take the document into consideration in deciding [a] defendant's motion to dismiss, without converting the proceeding to one for summary judgment.") (internal quotation marks and citation omitted).

Aff.]; Dkt. No. 65 [Brittonkill Defs.' Reply Mem. of Law]; Dkt. No. 66 [BOCES Defs.' Reply Mem. of Law].)  To those reasons, the Court adds the following analysis, which is intended to supplement but not supplant Defendants' reasons.

As a threshold matter, the Court finds that the claims against Defendant Roach must be dismissed because she is not a state actor.

"Private law firms and attorneys . . . are not state actors for section 1983 purposes." *Jaffer v. Patterson*, 93-CV-3452, 1994 WL 471459, at *2 (S.D.N.Y. Sept. 1, 1994) (citing *Polk Cnty. v. Dodson*, 454 U.S. 312, 318 [1981]); *see also Frierson v. Troy City Sch. Dist. Bd. of Educ.*, 17-CV-0044, 2018 WL 2926281, at *2 (N.D.N.Y. June 8, 2018) (D'Agostino, J.) (holding that an employee of a private law firm is not an employee or an official of the school district and thus, cannot be said to be a government actor).

Here, Plaintiff sets forth no factual allegations plausibly suggesting that Defendant Roach was involved in the decision-making regarding Plaintiff's discrimination complaint.  In addition, there is no factual allegation plausibly suggesting that Defendant Roach prevented anyone else from providing or played any role with regard to the District's allegedly delayed response to Plaintiff's request for the Title IX coordinator's name and contact information.  The only allegation regarding Defendant Roach is that she contacted Defendant DiDonato and requested that she act as an impartial hearing officer at the Stage II hearing.  (Dkt. No. 34, at 12; Dkt. No. 63, at 12-13.)  Defendant Roach's status as a private individual with no involvement in any of the allegations contained within the complaint requires that Plaintiff's Amended Complaint be dismissed against Defendant Roach.

In any event, all of Plaintiff's claims against all of the parties must be dismissed under

Fed. R. Civ. P. 12(b)(6) and 8.  As the Second Circuit has explained,

> [w]hen a complaint does not comply with the requirement that it be short and plain, the court has the power, on its own initiative or in response to a motion by the defendant, to strike any portions that are redundant or immaterial . . . or to dismiss the complaint.  Dismissal, however, is usually reserved for those cases in which the complaint is so confused, ambiguous, vague, or otherwise unintelligible that its true substance if any, is well disguised.

*Salahuddin v. Cuomo*, 861 F.2d 40, 41-42 (2d Cir. 1998) (citations omitted).  "Although courts must give *pro se* pleadings a liberal construction, 'the basic requirements of Rule 8 apply to self-represented and counseled plaintiffs alike."  *Tafari v. Rock*, 10-CV-0729, 2012 WL 1340799, at *3 (W.D.N.Y. Apr. 18, 2012) (quoting *Wynder v. McMahon*, 360 F.3d 73, 79 [2d Cir. 2004]).

In this case, the Amended Complaint is not simple, concise, or direct as required by Fed. R. Civ. P. 8.  Instead, Plaintiff's thirty-two page Amended Complaint is incoherent, rambling, and nearly unreadable.

Even if the Court were to solicitiously consider the seventy-five page, unsworn affidavit of John Doe and exhibits that Plaintiff submitted in opposition to the motions to dismiss,[11] the Court would find that Plaintiff's allegations are nearly indiscernible and rambling.  For example, the following are Plaintiff's most-discernable claims: (1) a claim that Brittonkill Defendants

---

[11]    The Court notes that it need not, and does not, consider the unsworn affidavit of John Doe and exhibits submitted by Plaintiff in opposition to the pending motions.  Even setting aside the fact that Plaintiff's "*pro se*" opposition was clearly prepared with the assistance of an attorney, the Court construes *Gill v. Mooney*, which considered an affidavit submitted opposition to a motion to dismiss, as not controlling here, where Plaintiff has already amended the complaint once.  *Gill v. Mooney*, 824 F.2d 192, 195 (2d Cir. 1987).  In any event, the factual allegations of Dkt. No. 63 cannot fairly be said to be "consistent" with the allegations contained in Dkt. No. 34 (which, despite being 32 pages long, is practically bereft of any of these factual allegations).  Finally, the Court notes that the "affidavit" of John Doe was neither signed before a notary public nor sworn pursuant to 28 U.S.C. § 1746.

intentionally discriminated against him in violation of Title VI of the Civil Rights Act by failing

to immediately provide the name and contact information of the Title IX coordinator; (2) a claim

that Defendants conspired to deprive him of his civil rights pursuant to 42 U.S.C. § 1985 by

selecting Defendant DiDonato as impartial hearing officer for the Stage II hearing; (3) a claim

that Brittonkill Defendants neglected to prevent the violation of his civil rights pursuant to 42

U.S.C. § 1986; and (4) a claim that Brittonkill Defendants were deliberately indifferent to the

violations of his civil rights by others pursuant to Title VI.[12] The Court will analyze each claim

---

[12] Plaintiff also mentions the First Amendment and suggests that his right to free speech was abridged when John Doe was prevented from asking Defendant Maloney questions at the Stage II administrative hearing. However, "[i]t is 'common ground' that the First Amendment 'does not guarantee the right to communicate one's views at all times and places or in any manner that may be desired.'" *Frierson v. Troy City Sch. Dist. Bd. of Educ.*, 17-CV-0044, 2018 WL 1357373, at *2 (N.D.N.Y. Mar. 15, 2018) (D'Agostino, J.) (citing *Heffron v. Int'l Soc'y for Krishna Consciousness*, 452 U.S. 640, 647 [1981]). Instead, "a violation occurs only when constitutionally protected speech is restricted, and the government's justification for the restriction is insufficient." *Frierson*, 2018 WL 1357373, at *2 (citing *Frisby v. Schultz*, 487 U.S. 474, 479 [1988]). A court must determine "(1) whether plaintiff's speech is protected by the First Amendment; (2) the nature of the form: public, designated or limited public, or nonpublic; and (3) whether the defendant's justifications for limiting the plaintiff's speech satisfy the requisite standard." *Piscottano v. Town of Somers*, 396 F. Supp. 2d 187, 200 (D. Conn. 2005) (citing *Cornelius v. NAACP Legal Def. & Educ. Fund*, 473 U.S. 788, 797 [1985]). The Court finds that, while Plaintiff and his representative's speech was protected by the First Amendment, the forum was a limited public form. *See Make the Road by Walking, Inc. v. Turner*, 378 F.3d 133, 143 (2d Cir. 2004) (holding that a limited public forum is created "where the government opens a nonpublic forum but limits the expressive activity to certain kinds of speakers or to the discussion of certain subjects."); *see also M.B. ex rel. Martin v. Liverpool Cent. Sch. Dist.*, 487 F. Supp. 2d 117, 132 (N.D.N.Y. 2007) (Mordue, C.J.) ("[e]xamples of a limited public fora include state university meeting facilities opened for student groups, . . . open school board meetings, . . . city-leased theaters, . . . and subway platforms opened to charitable solicitations."). In a limited public forum, the government may enforce reasonable time, place, and manner restrictions on speech so long they are "'justified without reference to the content of the regulated speech,' . . . 'narrowly tailored to serve a significant governmental interest,' and 'leave open ample alternative channels for communication.'" *Cornelius*, 473 U.S. at 818 (1985) (quoting *Clark v. Cmty. for Creative Non-Violence*, 468 U.S. 288, 293 [1984]). By Plaintiff's own admission, Defendant DiDonato, acting as impartial hearing officer at the Stage II hearing of November 20, 2017, interrupted Plaintiff or his representatives at the hearing on the ground that

in turn.

## 1.    Plaintiff's Claim of Intentional Discrimination

To state a claim under Title VI, a plaintiff must allege, *inter alia*, (1) that the defendant

discriminated against him on the basis of race, (2) that the discrimination was intentional, and (3)

that discrimination was a substantial and motivating factor for the defendant's actions. *Tolbert v.

Queens Coll.*, 242 F.3d 58, 69 (2d Cir. 2001).[13]  "A plaintiff alleging racial or gender

discrimination by a[n educational institution] must do more than recite conclusory assertions.  In

order to survive a motion to dismiss, the plaintiff must specifically allege the events claimed to

constitute intentional discrimination as well as circumstances giving rise to a plausible inference

of racially discriminatory intent."  *Yusuf v. Vassar Coll.*, 35 F.3d 709, 713 (2d Cir. 1994).  "Bald

assertions and conclusions of law will not suffice."  *Rodriguez v. N.Y. Univ.*, 05-CV-7374, 2007

WL 117775, at *5 (S.D.N.Y. Jan. 16, 2007) (quoting *Leeds v. Meltz*, 85 F.3d 51, 53 [2d Cir.

1996]).

The Amended Complaint and Plaintiff's opposition papers have not alleged facts

plausibly suggesting discriminatory intent or motivation on the part of Brittonkill Defendants for

failing to provide Plaintiff with the Title IX coordinator's information on October 4, 2017.

---

there was a process, that must be followed for the hearing.  (Dkt. No. 63, at 21.)  For these
reasons, the Court finds that to the extent Plaintiff has intended to assert a cause of action for
infringement of his right to free speech pursuant  the First Amendment, he has failed to allege
facts that plausibly suggest such a claim.

[13]     Title VI and Title IX operate in the same manner, except that Title VI prohibits
race discrimination in all programs receiving federal funds, whereas Title IX prohibits sex
discrimination in education programs.  *Gebser v. Lago Vista Indep. Sch. Dist.*, 524 U.S. 274, 286
(1998).  Here, Plaintiff makes no allegation that he was discriminated against on the basis of his
sex; as a result, the Court focuses on Title VI.

According to Plaintiff's own factual allegations, Plaintiff and John Doe were contacted by Defendant Shields, the District's Title IX coordinator on October 10, 2017, to conduct an investigation into Plaintiff's allegations. Moreover, the vast majority of the remaining allegations in the Amended Complaint and opposition papers are conclusory rather than factual. For example, the Amended Complaint alleges that Plaintiff was "continually . . . attacked and invidiously discriminated against by Richard Pogue," and that "Pogue continued the bullying, intimidation, and harassment, an abuse of power, to perform discriminatory practices against my child. Not appropriate." (Dkt. No. 34, at 4-5, 7.) In fact, the Amended Complaint and opposition papers allege that–"for reasons unknown"–Brittonkill Defendants failed to provide Plaintiff and his family with the contact information for the Title IX coordinator. (Dkt. No. 34, at 6; Dkt. No. 63, at 18.)

These "threadbare recitals" and conclusory allegations of discrimination are insufficient to establish liability. *Manolov v. Borough of Manhattan Cmty. Coll.*, 952 F. Supp. 2d 522, 532 (S.D.N.Y. 2013) (citing *Iqbal*, 556 U.S. at 679). Nowhere in either the Amended Complaint or his opposition papers does Plaintiff allege that any Defendant referred to his race, nor does he recite any other fact from which race-based discriminatory intent reasonably could be inferred. Without such a factual allegation, his discrimination claims cannot survive a motion to dismiss. *Manolov*, 952 F. Supp. 2d at 532 (citing *Sanders v. Grenadier Realty, Inc.*, 08-CV-3920, 2009 WL 1270226, at *5 [S.D.N.Y. May 6, 2009] [dismissing Title VI claim because plaintiffs gave no indication that their "race was accorded special weight" in determining who received rent subsidies, "thus making it a 'substantial' or 'motivating factor'"]; *Scaggs v. N.Y. Dep't of Educ.*, 06-CV-0799, 2007 WL 1456221, at *11 [E.D.N.Y. May 16, 2007] ["A complaint falls short . . .

where, as in this case, it 'fails to incorporate any factual allegations that would indicate how . . . race, gender, age, or national origin played a role' in the alleged actions against the plaintiff."]; *cf. Garcia v. S.U.N.Y. Health Scis. Ctr. of Brooklyn*, 280 F.3d 98, 112-13 [2d Cir. 2001] [granting summary judgment and dismissing Title II discrimination claim because plaintiff rather than alleging that school discriminated against him because of his learning disability, merely alleged that school denied his request to re-take an exam]; *Rodriguez v. New York Univ.*, 05-CV-7374, 2007 WL 117775, at *5-6 [S.D.N.Y. Jan. 16, 2007] [dismissing Section 1981 claims because, *inter alia*, plaintiff failed to allege facts supporting an inference that school was motivated by racial prejudice in disciplining plaintiff]; *Babiker v. Ross Univ. Sch. of Med.*, 98-CV-1429, 2000 WL 666342, at *4 [S.D.N.Y. May 19, 2000] [granting summary judgment and dismissing Title VI claim because plaintiff's "conclusory allegations are insufficient . . . to give rise to an inference of discrimination"]).

For these reasons, the Court finds that Plaintiff has not alleged facts plausibly suggesting a claim of intentional discrimination pursuant to Title VI.

### 2. Plaintiff's Claim of Conspiracy

"[T]o make out a violation of § 1985(3), . . . the plaintiff must allege . . . four elements: (1) a conspiracy; (2) for the purpose of depriving, either directly or indirectly, any person or class of persons of the equal protection of the laws, or of equal privileges and immunities under the laws; and (3) an act in furtherance of the conspiracy; (4) whereby a person is either injured in her person or property or deprived of any right or privilege of a citizen of the United States." *United Broth. of Carpenters and Joiners of America, Local 610, AFL-CIO v. Scott*, 463 U.S. 825, 828-29 (1983). In addition, "[t]he conspiracy must be motivated by racial animus." *Brown v. City of*

*Oneonta*, 221 F.3d 329, 341 (2d Cir. 2000).

"[C]omplaints containing only conclusory, vague, or general allegations that the defendants have engaged in a conspiracy to deprive the plaintiff of his constitutional rights are properly dismissed; diffuse and expansive allegations are insufficient, unless amplified by specific instances of misconduct." *Ciambriello v. Cnty. of Nassau*, 292 F.3d 307, 325 (2d Cir. 2002) (internal quotations and citation omitted).

The Amended Complaint and opposition papers do not allege facts plausibly suggesting that the conspiracy was motivated by racial animus. Instead, Plaintiff merely alleges that Defendant DiDonato was selected to act as hearing officer for the Stage II hearing for the purpose of violating his civil rights. (Dkt. No. 63, at 12-13.) The Amended Complaint alleges that Defendant Roach and Defendant DiDinato had a "chat" and "[c]learly, the chat, between Susan [DiDonato] and Mary Roach, was not about child's well-being, remedy of admitted violations, corrective measures, with just a day's notice, a known productive arrangement, to immediately end the known hostile environment, harassment, discrimination and retaliation, as admitted on the record, pursuant to Title IX Report October 18, 2017, to bring the District into compliance." (Dkt. No. 34, at 12.) The Court will note that having a conversation about a topic other than the topic of ending alleged discrimination is not a violation of Plaintiff's civil rights. In addition, for the reasons set forth above in Part III.A.1. of this Decision and Order, Plaintiff's allegations do not plausibly suggest that the conspiracy was motivated by racial animus.

Therefore, the Court finds that Plaintiff did not allege facts plausibly suggesting a claim of conspiracy pursuant to 42 U.S.C. § 1985.

### 3. Plaintiff's Claim of Neglect to Deprive Him of His Civil Rights

"Since a Section 1986 claim is predicated on a valid 1985 claim, if the court finds no valid 1985 claim, there is no valid 1986 claim either." *Brown*, 221 F.3d at 341.

As set forth above in Part III.A.2. of this Decision and Order, the Court finds that Plaintiff has not stated a claim pursuant to 42 U.S.C. § 1985; as a result, the Court finds that he does not have a valid claim pursuant to 42 U.S.C. § 1986.

### 4. Plaintiff's Claim of Deliberate Indifference to Discrimination

To state a claim of deliberate indifference to harassment of a student, the plaintiff must allege four elements: (1) that the school district had substantial control over the harassment, (2) that the harassment was severe and discriminatory, (3) that the school district had actual knowledge of the harassment, and (4) that the district acted with deliberate indifference to the harassment. *Zeno v. Pine Plains Cent. Sch. Dist.*, 702 F.3d 655, 665 (2d Cir. 2012) (citing *Davis Next Friend LaShonda D. v. Monroe Cnty. Bd. of Educ.*, 526 U.S. 629, 643-50 [1999]).

"A school district will be subject to liability for third-party conduct only if it 'exercises substantial control over both the harasser and the context in which the known harassment occurs.'" *Zeno,* 702 F.3d at 665 (citing *Davis*, 526 U.S. at 644-45 [reasoning that the school must have "control over the alleged harassment" and "authority to take remedial action"]). "A school district . . . exercises substantial control over the circumstances of the harassment when it occurs 'during school hours and on school grounds.'" *Id.* (citing *Davis*, 526 U.S. at 646); *see also T.E. v. Pine Bush Cent. Sch. Dist.*, 58 F. Supp. 3d 332, 357 (S.D.N.Y. 2014) (citing *Zeno*, 702 F.3d at 668 [noting that the fact that the harassment occurred on school grounds or its contracted buses supported the jury's finding that the district had substantial control over the circumstances

of the harassment]; *see also Davis*, 526 U.S. 646 [finding that a school has control over harassment that occurs "during school hours and on school grounds"]); *Zeno*, 702 F.3d at 668 (holding that the district had substantial control over harassment that occurred on buses the district had hired where the harassers were fellow students over whom the district had disciplinary oversight). "Similarly a school district's authority to take remedial action lies in its longstanding disciplinary oversight over its students." *Zeno*, 702 F.3d at 665 (*see, e.g. New Jersey v. T.L.O.*, 469 U.S. 325, 342 n.9 [1985]; *Tinker v. Des Moines Indep. Cmty. Sch. Dist.*, 393 U.S. 503, 507 [1969]). As a result, "[i]n order for a funding recipient to be held liable under a theory of 'deliberate indifference,' the funding recipient must have substantial control over both the alleged harasser and the environment in which the harassment occurs." *Oliveras v. Saranac Lake Cent. Sch. Dist.*, 11-CV-1110, 2014 WL 1311811, at *16 (N.D.N.Y. Mar. 31, 2014) (D'Agostino, J.) (citing *Tyrell v. Seaford Union Free Sch. Dist.*, 782 F. Supp. 2d 601, 626 [E.D.N.Y. 2011]) (holding that, although the incident occurred on school property, the plaintiffs and the defendants were unable to identify the perpetrators of the incident and thus, the district did not have substantial control over the harassers).

In addition, "[t]he harassment must be 'severe, pervasive, and objectively offensive' and discriminatory in effect." *Oliveras*, 2014 WL 1311811, at *14 (citing *Davis*, 526 U.S. at 650-51; *see also DiStiso v. Cook*, 691 F.3d 226, 242 [2d Cir. 2012] [acknowledging the "severity requirement"]).

Moreover, "only deliberate indifference to [student-on-student] harassment can be viewed as discrimination by school officials themselves." *Gant ex rel. Grant v. Wallingford Bd. of Educ.*, 195 F.3d 134, 140 (2d Cir. 1999) (citing *Davis*, 526 U.S. at 643-44). "A finding of

36

deliberate indifference depends on the adequacy of a school district's response to the harassment." *Zeno*, 702 F.3d at 666 (citing *Hayut v. State Univ. of New York*, 352 F.3d 733, 750 [2d Cir. 2003]). "A failure to respond, . . . a response that 'only follows after a lengthy and unjustified delay,' . . . and a response that 'amount[s] to deliberate indifference to discrimination,' . . . have all be found to be inadequate" and thus, courts found deliberate indifference in those circumstances. *Id.* (citations omitted). "[A] school district's actions are only deliberately indifferent if they were 'clearly unreasonable in light of the known circumstances." *Id.* (citing *Davis*, 526 U.S. at 648; *Gant*, 195 F.3d at 141). "Thus, when weighing the adequacy of a response, a court must afford sufficient deference to the decisions of school disciplinarians." *Id.* (citing *Davis*, 526 U.S. at 648 ["[C]ourts should refrain from second-guessing the disciplinary decisions made by school administrators."]; *cf. Tinker*, 393 U.S. at 507). "To that end, victims do not have a right to specific remedial measures." *Id.* (citing *Davis*, 526 U.S. at 648).

Plaintiff's Amended Complaint and opposition papers allege the occurrence of three incidents during which Plaintiff was allegedly harassed by third-parties.

The first incident allegedly occurred On March 23, 2017, when Plaintiff had a verbal conflict with a female student on the bus. (Dkt. No. 63.) Plaintiff alleges that the female student's parent chased the bus then boarded the bus and used racial slurs directed at Plaintiff with the intention of attacking Plaintiff. (*Id.*) Plaintiff alleges that this incident was known by Defendant Pogue, Defendant Rockwell and Defendant Shields. (*Id.*) Plaintiff alleges that the New York State Police were summoned to intervene and remove the parent from the bus, the District unsuccessfully attempted to press charges against the parent, and the parent was banned

from District campus.  (*Id.*; Dkt. No. 34, at 13.)

The second incident allegedly occurred on January 23, 2018, when the same female student attacked Plaintiff.  (Dkt. No. 63.)  Plaintiff alleges that this incident was "directly related" to the incident on March 23, 2017.  (*Id.*)  Plaintiff alleges that the District arranged for the female student to be removed from the bus that transported Plaintiff to and from school and offered to assign a one-on-one aide to accompany Plaintiff throughout the school day to ensure there were no further incidents.  (*Id.* at 28-29.)  In addition, Plaintiff alleges that the female student's actions were considered in a disciplinary context but it is not clear the outcome of that consideration.  (*Id.*)  Plaintiff alleges that he got sick on the bus route to school on January 24, 2018, and did not return to school thereafter.  (Dkt. No. 63.)

The Court is unable to decipher any information about the third incident other than that it occurred sometime between 2016 and 2018.  (*Id.* at 65.)

The first incident is the only incident regarding which Plaintiff alleges facts that plausibly suggest that the harassment was motivated by discrimination.  However, Plaintiff's allegations regarding this incident do not plausibly suggest a claim of deliberate indifference to discrimination for two reasons.

First, while the first incident happened on school property (a bus), the District did not have substantial control over the parent harasser in the incident.  There is no allegation that the female student involved in the first incident used a racial slur or was in any way motivated by discrimination.  The parent of the female student is the only individual alleged to have used a racial slur.  However, the District does not have the ability to take remedial action against parents as it does students.

Second, one could not reasonably infer from Plaintiff's allegations regarding the first incident that the District was deliberately indifferent to this incident. Instead, Plaintiff's allegations and supporting documents make clear that the District took reasonable measures to protect Plaintiff from future harassment. Law enforcement was summoned in response to this incident, the District attempted to press charges against the parent, and the parent was banned from coming on to school property.

For all of these reasons, the Court finds that Plaintiff has failed to state a claim upon which relief could be granted as to Brittonkill Defendants, BOCES Defendants and Defendant Roach.[14]

### B.     Whether, in the Alternative, Defendants Maloney, Pogue, Rockwell, Shields, Bishop, Roadcap, Lutgens, Turnbell, Retell, Goss, Fortun, Wieman, and Parsons, Should Be Dismissed Because They Were Not Properly Served

In the alternative, after carefully considering the matter, the Court grants Brittonkill Defendants' motion to dismiss with regard to Defendants Maloney, Pogue, Rockwell, Shields, Bishop, Roadcap, Lutgens, Turnbell, Retell, Goss, Fortun, Wieman, and Parsons for insufficient service of process for the reasons stated in Brittonkill Defendants' memoranda of law. (Dkt. No. 39, Attach. 4 [Brittonkill Defs.' Mem. of Law]; Dkt. No. 65 [Brittonkill Defs.' Reply Mem. of Law].) To those reasons, the Court adds the following analysis, which (again) is intended to supplement but not supplant Brittonkill Defendants' arguments.

As set forth in Brittonkill Defendants' memorandum of law, Plaintiff's attempt at serving

_____

[14]     Because Plaintiff has failed to allege facts supporting any violation of his constitutional rights, he has not stated a claim that a violation resulted from a custom or policy of the District or of BOCES. *Wright v. City of Syracuse*, 611 F. App'x 8, 12 (2d Cir. 2015). As a result, Plaintiff's Amended Complaint is dismissed as to all Britonkill Defendants, BOCES Defendants, and Defendant Roach.

Defendants Maloney, Pogue, Rockwell, Shields, Bishop, Roadcap, Lutgens, Turnbell, Retell, Goss, Fortun, Wieman, and Parsons by delivering a box containing multiple copies of the summons and Plaintiff's original Complaint to Defendant Lewis constituted improper service. Fed. R. Civ. P. 4. (Dkt. No. 39, Attach. 4, at 9.) To date, the Court is not aware of proper service of process on Defendants Maloney, Pogue, Rockwell, Shields, Bishop, Roadcap, Lutgens, Turnbell, Retell, Goss, Fortun, Wieman and Parsons.

"On a motion to dismiss pursuant to Rule 12(b)(5) for deficient service of process, 'the plaintiff bears the burden of establishing that service was sufficient.'" *TAGC Mgmt., LLC v. Lehman*, 842 F. Supp. 2d 575, 580 (S.D.N.Y. 2012) (quoting *Khan v. Khan*, 360 F. App'x 202, 203 [2d Cir. 2010]). "Plaintiff must meet this burden by making a prima facie case of proper service 'through specific factual allegations and any supporting materials,' . . . and conclusory statements alone are not sufficient to overcome a defendant's sworn affidavit that service was improper." *TAGC Mgmt., LLC*, 842 F. Supp. 2d at 580 (citing *Kwon v. Yun*, 05-CV-1142, 2006 WL 416375, at *2 [S.D.N.Y. Feb. 21, 2006]; *Darden v. DaimlerChrysler N. Am. Holding Corp.*, 191 F. Supp. 2d 382, 387 [S.D.N.Y. 2002]).

More than 90 days have elapsed since Plaintiff filed his original complaint and Amended Complaint. (Dkt. No. 1; Dkt. No. 34.) Plaintiff has been on actual notice of the deficient service since February 23, 2018, when Brittonkill Defendants' counsel sent John Doe a letter outlining the deficiency. (Dkt. No. 39, Attach. 2.) In addition, Plaintiff was provided further notice and an opportunity to respond to Brittonkill Defendants' memorandum of law, which highlighted the deficiency. (Dkt. No. 39, Attach. 4, at 9-10.) However, Plaintiff has failed to respond to the deficiency and has not shown good cause for the failure to timely serve Defendants Maloney,

Pogue, Rockwell, Shields, Bishop, Roadcap, Lutgens, Turnbell, Retell, Goss, Fortun, Wieman and Parsons, pursuant to Fed. R. Civ. P. 4(m).

As a result, the Court grants Brittonkill Defendants' motion to dismiss with regard to Defendants Maloney, Pogue, Rockwell, Shields, Bishop, Roadcap, Lutgens, Turnbell, Retell, Goss, Fortun, Wieman, and Parsons for insufficient service pursuant to Fed. R. Civ. P. 12(b)(5). *See Bloom v. Democratic Nat. Comm.*, 01-CV-1159, 2002 WL 31496272, at *2 (S.D.N.Y. Nov. 6, 2002) (dismissing the *pro se* plaintiff's amended complaint where the plaintiff failed to serve the summons); *compare with Thompson v. Maldonado*, 309 F.3d 107, (2d Cir. 2002) (holding that *sua sponte* dismissal pursuant to Fed. R. Civ. P. 4[m] required that plaintiff be given notice); *Burdick v. Oswego Cnty., NY*, 15-CV-0353, 2015 WL 6554515, at *4 (N.D.N.Y. Oct 29, 2015) (D'Agostino, J.) (denying the defendants' motions to dismiss for insufficient service of process where, within 120 days from the plaintiff's filing of the complaint, service of the summons and complaint was personally served by an non-party pursuant to Fed. R. Civ. P. 4).

For all of these reasons, Defendants' motions to dismiss are granted.

**ACCORDINGLY**, it is

**ORDERED** that the Clerk of the Court is directed to amend the docket such that Defendant "Questar III (BOCE)S" is changed to "BOCES;" and it is further

**ORDERED** that the Clerk of the Court is directed to amend the docket such that Defendant "Susan Didinato" is changed to Defendant "Susan DiDonato;" and it is further

**ORDERED** that the Clerk of the Court is directed to amend the docket such that "2 Teachers" are no longer listed as defendants in this action; and it is further

**ORDERED** that Brittonkill Defendants' motion to dismiss (Dkt. No. 39) is **<u>GRANTED</u>**; and it is further

**ORDERED** that Defendant Roach's motion to dismiss (Dkt. No. 43) is **<u>GRANTED</u>**; and it is further

**ORDERED** that BOCES Defendants' motion to dismiss (Dkt. No. 44) is **<u>GRANTED</u>**; and it is further

**ORDERED** that Plaintiff's Amended Complaint (Dkt. No. 34) is **<u>DISMISSED</u>** as to Brittonkill Defendants, Defendant Roach, and BOCES Defendants; and it is further

**ORDERED** that Plaintiff show cause in writing, on or before January 18, 2018, how, if at all, his Amended Complaint asserts actionable claims against Defendants "School Attorney," "Superintendent," "Principal," "Assistant Principal," "Title IX Coordinator," and "Union Representative," in light of this Decision and Order; and it is further

**ORDERED** that Plaintiff show cause in writing, on or before January 18, 2018 why the Court should not *sua sponte* dismiss her action without prejudice with regard to unserved defendants pursuant to Fed. R. Civ. P. 4(m) and 41(b), and Local Rule 41.2(a) of the Local Rule of Practice for this Court, for failing to timely serve Defendants School Attorney, Superintendent, Principal, Assistant Principal, Title IX Coordinator, and Union Representative.

Dated:     December 18, 2018
           Syracuse, NY

Hon. Glenn T. Suddaby
Chief U.S. District Judge